Thank you. Good morning. May it please the court. C.B. Kirshner appearing on behalf of petitioner appellate Christopher Zimmerman. I would like to reserve approximately three minutes for rebuttal and I will keep an eye on my own time if the clock starts running. Very well. Thank you. The proposition against ex post facto laws isn't new. Justice Chase delivered the opinion in Calder versus Bull over 220 years ago. Nevertheless, respondents are asking this court to break with tradition and upend long-standing precedent in order to sustain the conviction against Mr. Zimmerman. Doing this, however, would undermine the public's trust in the law. Nevada's amended jurisdictional statute was retroactively applied in order to prosecute Mr. Zimmerman. This resurrected a time-barred prosecution and subjected Zimmerman to increased punishment. This was a textbook ex post facto violation. Can I ask you to, at the outset... In what sense? Mr. Judge Smith is to speak. I'm sorry. Go ahead. Yeah. In what sense was this time-barred? The prosecution was time-barred because by the time Mr. Zimmerman was identified in connection with the case, he had already turned 21 and thus was no longer subject to the jurisdiction of the juvenile court. However, at that time, there was also no law saying that there was jurisdiction in the adult criminal court for someone who had aged out of juvenile court. I thought that the, first of all, the Nevada Supreme Court said, I believe, that he was always subject to the jurisdiction of a court. And I think they also indicated that in this particular case, um, that, um, uh, he could have been charged as an adult, even when he was at a younger age. Is that correct? That is not exactly correct, no. And what was wrong? Let me try to address both parts of your Honor's statement. First, the Nevada Supreme Court did say that some court always has jurisdiction. That statement is only correct insofar as the juvenile court originally had jurisdiction of Mr. Zimmerman at the time of the offense, but lost jurisdiction when he turned 21. To apply that statement, some court always has jurisdiction to mean that even after Mr. Zimmerman turned 21, he could be prosecuted in the adult criminal court without legal basis. We're dealing here with a matter of state law, aren't we? So let's assume that at the top, and neither of you discussed the Barron decision very much, but it's the basis for the Supreme Court's decision in this case. And as I read Barron, it says, a defendant in Nevada is always subject to the jurisdiction of some court. And if the defendant is charged after the age of 21, that's the district court. If the defendant is charged under the age of 21, it's originally, with some exceptions, not relevant here. The juvenile court. Barron says that to me quite clearly. And it says that's always been the law. So in effect, your opponents didn't need to run off to go to the legislature to get the law changed to cover Mr. Zimmerman. What's wrong with my reading of Barron? I don't think there's anything wrong with your Honor's reading of Barron. I think there was a problem with the holding in Barron by the Nevada Supreme Court. But is the holding a state law holding in Barron? See, if it's a state law holding, if it says, gee, our statutes may seem confusing to all of you guys, but under our interpretation, the Nevada Supreme Court said, there's always been jurisdiction to prosecute somebody in Mr. Zimmerman's position or Mr. Barron's position in adult court. Don't we have to honor that reading of state law? In this case, your Honor, no. And that's because the Nevada Supreme Court statement was not an interpretation of any Nevada statute. And respondents didn't even really try to identify one in their brief. The only thing that the Nevada Supreme Court identified was a venue statute that did not answer a question of jurisdiction between the adult criminal court and the juvenile court. But maybe it was a terrible decision. Maybe it was a terrible decision. And if we could review it, we would come out differently. But doesn't it say that there is jurisdiction, there was jurisdiction even before the amendment in the adult court to try somebody who was charged after the age of 21? If it does say that, then it seems to me, even though its reasoning may be terrible, it's, I'm not sure that it's a matter for us to criticize on habeas. Your Honor, this court is not bound by a state court interpretation of its statutes when that opinion is untenable. And in this case, contrary to clearly defined statutes within the state of Nevada. With respect, counsel, this is an AEDPA case. And I realize AEDPA is not a popular statute for you in this case. But I don't need to tell you what AEDPA requires us to look to determine whether the state Supreme Court controls in this case. As my colleague pointed out, this is a state law interpretation. What aspect of AEDPA would you cite that permits us to overturn or get around what the state courts have done here? Your Honor, I would say to the provision that the Nevada Supreme Court's opinion was contrary to clearly established federal law. But what aspect of federal law did it overturn? Or was it contrary to? It was contrary to the United States Supreme Court's decision in Collin v. Youngblood, as well as Weaver v. Graham. With both, excuse me, which both state that even procedural rules can trigger an ex post facto analysis. That courts are required to look at whether or not an offender's health, his rights are affected. But in this case, though, the only Youngblood issue you've got is whether you've waived the ability to argue that he had near-climate substance abuse or behavioral problems that would have kept him in juvenile court. I don't know you've raised that, have you? I'm sorry, Your Honor. I'm not sure I understand that question. Okay. In other words, you cited Youngblood as a way around the AEDPA problem. What I'm saying is that under Nevada law, your client could have avoided the adult court if he had had a substance abuse problem or behavioral problems that should have kept him in juvenile court. I don't believe he raised that argument. And I'm asking you whether that was waived. No, Your Honor. I don't believe that that argument was waived or that respondents have ever indicated that it was. Although I would also like to point out- Did he raise it? And if so, when and where? Your Honor, I don't have that portion of the record committed to memory, but I'd be happy to attempt to address it on rebuttal. The reason why I don't think it's really relevant is because the question isn't whether there was a possibility or even a likelihood that Mr. Zimmerman would have been certified as an adult had he been originally charged in the juvenile criminal court. That prospective violation is because he was denied that process. He had a substantive right to have a court make that determination. And that process was denied to him when the amended statute was retroactively applied. This is where we're missing each other. And so I want to be clear on this. What the Nevada Supreme Court said in Barron, and you agreed with my reading of it, and I think it's plainly what it said, is a person charged after the age of 21 never had a right to be in juvenile court. That's not what our procedural rules or our substantive rules said. Our procedural and substantive rules said that he would be charged in adult court. And that's a reading of Nevada's procedural and substantive rules. Unless it's a pretext or a charade, as we've said in one case, we've got to follow that. Now, Judge Smith was asking you about a separate point, and that's really the one I want to ask you about now. You seem to be arguing your brief here. Well, even if that's true, under previous law, there's a statute that somebody who is discovered to have been 18 or 19 or under 21 when he committed his crime should be remitted to juvenile court for something. It doesn't say for what. And you make that argument to us, but I'm not sure I can find that you ever made it to the state court and exhausted it. And it involves an interpretation of Nevada law that I'm not sure is very straightforward. So Judge Smith's question, and if you're going to look, it would be helpful to me to see, is did you raise any argument? And I'll give you the statute number. It's 62B-331 or 62A-030-1B. And so the question is, you raise it in your brief. You say, well, even because he was less than 21 when he committed his crime, he had the right to be sent to juvenile court, which might have made a determination of some kind. I don't know what. But I don't see that argument being having been made to the state court. And it involves an interpretation of state law. And unfortunately, if you didn't exhaust it, even if the state doesn't raise it, AEDPA tells us we can't address it. So I'm trying to figure out whether you raised that argument to the state court. I think, I won't speak for Judge Smith, but I think that's what he was trying to figure out also. I appreciate your help. Your Honor, Mr. Zimmerman and counsel who was representing him in the state court filed a motion to dismiss the prosecution against him in Nevada's adult criminal court for three reasons. One, arguing that there was no jurisdiction at all by the adult court. Two, the cause of the ex post facto violation. And three, the cause of the pre-arrest delay. And, but Mr. Zimmerman. Yeah, I understand that and I've read it. I've read it. My question is, and you can do it now or you can do it in a supplement after argument, did anybody ever argue to the state court that he was, his constitutional rights were violated because he was deprived of the right to be sent back to juvenile court for some purpose? I don't know what purpose. If you didn't, then it wasn't exhaustive. If you did, it was. And following up on that point, the reason that becomes important, particularly under EDPA, is because putting the statute, the amended statute aside, if when your client was before the juvenile court, he said, you know, I don't want to be tried as an adult because I'm a drug addict or I've got this behavioral issue. The statute, the Nevada statute specifically contemplated that that might be a factor in keeping him in juvenile court. But like my colleague, I don't remember seeing anything that suggested that he had made such an argument at any, before any Nevada court. So if you have a citation, that would be helpful. I will look at that, Your Honor, but there may be some confusion with regards to my argument, and I apologize if I'm the fault of that. But there would have been no basis to stand in adult criminal court once Mr. Zimmerman, he was 26 by the time he was charged, and argued that his case should have been sent back to the juvenile court. That couldn't happen. The juvenile court lost jurisdiction once he turned 21. And that was my, and counsel, that was my understanding of the statutory scheme. So, but I thought your brief argued that he was deprived of some important right because under the previous scheme, even though he was over 21, he might be sent back to juvenile court. If you're not making that argument, if you're not making that argument, then there's no reason for us to find out whether it's exhausted. No, Your Honor, I'm not making that argument. The only reason I brought up the fact that he had that right was to show that he had that right at the time of the offense. But those no longer apply. Once he turned 21, there was no jurisdiction in the juvenile court. There was also no jurisdiction in the adult court until this amended statute was retroactively applied to him. Okay, now I understand your argument. Do you want to save your time? Do you want to save any of your time? I would, Your Honor, yes. Okay, why don't we do that? And then if my colleagues have other questions, we can do that later. So let's now hear, let's now hear from Ms. Spills. Thank you, Your Honors. Good morning, Your Honors, and may it please the court. My name is Jamie Spills and I represent Respondent Zappolese in this matter. Respondents ask this court to affirm the decision of the Nevada State Courts and the Federal District Court and hold that Zimmerman is not entitled to habeas relief. Your Honors, this case is about a man who brutally raped a woman as a juvenile, which subjected him to trial as an adult in State District Court. He managed to escape detection until he was an adult and now claims that he cannot be held responsible for his crime. However, his arguments do not support his attempt to evade responsibility. This court will see Zimmerman is not entitled to habeas relief for two reasons. First, NRS 62B.3330 simply clarified existing jurisdiction and did not violate the ex post facto clause. Well, that wasn't your that wasn't your office's position or the state's position when they went to the legislature. When they went to the legislature, you all read the existing statutes as providing no jurisdiction over people like Mr. Zimmerman and said you need to change the statutes to do that. You may have gotten rescued later by the Nevada Supreme Court, which read the statutes as providing that jurisdiction. But isn't it true that you're the state went to the legislature and said there is no jurisdiction over people like Mr. Zimmerman, so you better change the law? Yes, Your Honor. The state was confused at the time regarding whether jurisdiction existed or not. But it's not up to the prosecuting attorney at the time to make that decision what the statutes actually read that's up to the state court and what the Nevada Supreme Court stated was that there was always jurisdiction in existence. As Your Honor has pointed out before, pursuant to the Barron case, some court always had jurisdiction, which is backed up by Article 6, Section 6 of the Nevada Constitution, which imparts a general grant of jurisdiction over everyone to state courts, as well as NRS 171.010. In their brief, in his brief, Zimmerman points out that NRS 171.010 claims that 171.010 does not have anything to do with jurisdiction. But if Your Honors look to the actual language of the statute, it's specifically titled Jurisdiction of Offense Committed in State and states that every person of the state or another state is liable to punishment by the laws of Nevada for public offense committed therein, which is why the Nevada Supreme Court correctly determined that there was no ex post facto violation. What if they were incorrect? Does it matter? I beg your pardon? What if they were incorrect in their interpretation of Nevada law? Does it matter? It doesn't matter, Your Honor, because this court has to give deference first to the Nevada Supreme Court's interpretation of its own state laws. And second, Zimmerman is unable to point to any clearly established federal law that has been violated by the Nevada Supreme Court's interpretation. Mr. Zimmerman points to Collins in support of his argument, but what Collins actually says is that generally a retroactive procedural change to law does not violate the ex post facto clause unless the change affects matters of substance by arbitrarily infringing upon... Well, see, and that's where I have some difficulty with your argument. It may not matter in light of Barron, but if in fact, as the state mistakenly believed, Mr. Zimmerman could not have been tried until this retroactive change in the law was made, it strikes me as a textbook ex post facto violation. So it's not... A change in the law that is applied retroactively and makes somebody subject to trial who couldn't have been tried before is the picture of an ex post facto violation in the dictionary. What... The reason that I think you escape that problem here is the Nevada court said, well, that was never the law. The new law didn't change that. He was always subject to the jurisdiction of the court. So I think there is some clarification that was made by the change in the statute, the amendment to NRI 62B, but it didn't actually change the ability that existed at the time that Zimmerman committed his offense to be tried in state district court as an adult. So what the ex post facto clause is concerned with, and your honor is correct, if there is some sort of change in the ability for the state to prosecute, then yes, that would be an ex post facto violation, but that's not the case here. What happened here is that because of the nature of the crime that Zimmerman committed, he was always subject to trial as an adult in state district court. So there are a number of situations in place at the time that Zimmerman committed his crime that allowed for juveniles to be tried in district court. One of those things was when a juvenile at least 14 years old charged with sexual assault involving the use or threatened use of force or violence against the victim could be tried as an adult in state district court. And here Zimmerman did commit sexual assault that involved the use or threatened use of force or violence against the victim, as the court can see in the PSI at pages eight to nine. But again, I'm not sure why you're going there, given the barren decision, because a juvenile under those circumstances, as Judge Smith pointed out, would have been entitled to argue to the juvenile court that you shouldn't transfer me. I've got, I'm appealing to your discretion not to transfer me, and I've got certain circumstances that would mean that I shouldn't be. That would have been an important right. If I were a juvenile, I'd like to have that right. Your argument has to be that's all irrelevant because he was arrested after age 21. And so I don't know why you're going back to that argument. I know it was your original argument to the district court, but in the absence of barren, I don't know how it works. Your Honor, the thing that the state is concerned about is the range of punishment available was. And according to the Nevada Supreme Court decision, yes, it is irrelevant because of barren. But if this court is looking past barren, that's when this comes. If I look past barren, if I look past barren, I think you lose. That's my problem. So I'm not sure why you're asking me to look past barren. If I look past barren, he was deprived of an important, at least procedural right, the ability to argue to the juvenile judge that he shouldn't be subjected to that larger punishment because he met certain criteria. Now, I don't have to address that in light of barren, but I'm just not sure why you think that wasn't an important procedural right. Your Honor, I think that the state is concerned about what the state's position is trying to explain, is that the state's looking at the range of potential punishment. So was Zimmerman able to be tried as an adult? There was possibility for that, which means that the change, the amendment did not actually change what the range of potential punishment for him, the potential jurisdiction punishment for him was. But yes, you are correct that none of this matters in light of barren and the deference that's owed under EDPAT. It seems to me, I'm sorry, Judge Smith. Okay, can I just change a little bit here? The state court indicated that the five-year post-arrest prosecution delay didn't violate the defendant's due process rights. Since we look at the case through the lens of EDPAT, do we have to give deference to that? Or was there, in fact, a real due process error here in the long delay? Two things, Your Honor. First, yes, EDPAT deference is definitely owed to the court, not only because it's, again, an interpretation based on the factual findings made by the court, but also, again, because the state court is entitled to make these kinds of rulings. The second part is that there was no prejudice to the defendant. There was no prejudice to Zimmerman as a result of the delay. So, the Lovasco case by the United States Supreme Court explicitly rejected the notion that due process bars prosecution even if a defendant suffers actual prejudice due to pre-indictment delay. And here, there wasn't even any actual prejudice that was established. So, Zimmerman cites to several different things, including the identification by the... I'm sorry, I'll speak up more. Zimmerman cites to this issue, this alleged issue with the identification by the victim, but that doesn't actually establish actual prejudice. In fact, what actually happened was that the victim stated she looked him up because she received a subpoena regarding his criminal trial, which would have happened regardless of whether or not he was delayed in being indicted. So, whenever he was tried, there would have been a subpoena issue to the victim. None of this was a result of the delay. Further, the other time she looked him up, the other time she looked at pictures of him was when the DA's office was preparing her for trial and showed her pictures of Zimmerman, which again, would have happened regardless of when he was indicted and when he was tried. And this is in the record at EOR 144 to 145. The other issue that Zimmerman raises is regarding the DNA not being subjected to testing, but it is a speculative argument that they are making about the DNA because there were four different DNA samples taken from the victim. There was one from her left breast, one from her right breast, one from her underwear, and one from a vaginal swab, all of which matched to the DNA that Zimmerman had in the database that eventually led to the seizure order, where another DNA sample was taken from Zimmerman. And again, that DNA sample matched all of the DNA samples that the state had. So, it defies logic to say that there was some sort of issue with the DNA testing when there were two separate samples taken from Zimmerman that matched to all four DNA samples taken from the victim. And all of this is fully documented in the record in the PSI at page 9 and EOR 45 to 51. So, there's been no actual prejudice established in this case by Zimmerman, which means that there is no due process violation, because again, LoBasco says you have to actually establish, the defendant actually has to establish actual prejudice. Further, there has to be some sort of a bad faith tactical advantage issue from the state's delay. Here, the state was confused about why there was a need for delay. The state was confused about the proper jurisdiction. So, the state went through the process of trying to make sure that they could actually correctly charge Zimmerman and go about obtaining a conviction in the correct process, which is allowed under LoBasco. There was no bad faith intention, nor was there some sort of delay taken to specifically gain tactical advantage over Zimmerman himself. So, there was no violation according to the rules under LoBasco. Therefore, the state did not violate Zimmerman's due process rights because there was no violation of either of these factors. And the Nevada Court of Appeals correctly determined that under this test, Zimmerman did not establish that there was a due process violation and rejected this claim. So, ultimately, when Zimmerman was asked what he felt would be appropriate consequences for his actions, he said he believed he should have been incarcerated and not be allowed to be free. And the state agrees with this. Zimmerman cannot and should not be allowed to avoid the consequences of his actions. And his arguments failed to meet his burden under EDPA to show that there was some sort of clearly established federal law violated by the state's decisions by the Nevada Supreme Court and Nevada Court of Appeals decisions. Accordingly, and for the foregoing reasons, respondents asked this court to affirm the state's determinations. And if there are no more questions, I will save the rest of my time. Okay. Any other questions by my colleague? No, not at this time. All right. Thank you, Your Honor. We appreciate it. So, let's hear now from Ms. Kirshner. You have some time left. Thank you, Your Honor. Your Honor, briefly, I would just like to address, again, the decision in Barron, which I believe was untenable, or to use Your Honor's word, pretextual. This is not the first time the Nevada Supreme Court has played games with this change in the law versus clarification of the law language in order to avoid an undesirable outcome. But if the Nevada Supreme Court was confused about whether the amended statute was a new law or a clarification of preexisting law, the rules of statutory construction would have directed the court to look at the legislative history. The word is not what came from the DA's office. It's what came from the legislature. The DA, in this case, was actually a member of the Juvenile Justice Subcommittee and said she was charged with solving the problem of this jurisdiction gap. And the amended legislation was the solution to that jurisdiction gap. Let's say you're right about Barron. What, under AEDPA, do you believe we can do about it? Are we not bound by Nevada's Supreme Court's decision? And if not, what do you rely upon under AEDPA that gives us permission to ignore it? Your Honor, as I cited in my reply brief, this court is not bound by a state court opinion that is untenable or, as Judge Hurwicz said, pretextual. That this court is only bound by... Is that what AEDPA says? No, Your Honor, that's what case law under AEDPA has said. Okay, I don't remember those words. Let's, but tell me specifically. You know, there are two grounds for our overturning this. I don't see where there's a federal case from the Supreme Court or us that would allow us to overturn Barron. Am I wrong? No, Your Honor. This court all the time looks to state courts to see whether or not their opinions fall within the confines of the U.S. Constitution. And just because the Nevada Supreme Court makes an unfounded statement, some court always has jurisdiction, just as if the Nevada Supreme Court has said the moon is made of cheese. We know that that's not true. And we can look at the legislation, the laws in place in Nevada, and see that that statement was simply wrong. That that was not an interpretation of currently existing Nevada law that would bound this court. It was an unsubstantiated statement. There's nothing in AEDPA that says this court is bound by that because it was not interpreting any law when it made that statement. That's the problem under AEDPA. Do either of my colleagues have additional questions for Ms. Kirshner? No. If not, well, we thank both counsel  Zimmerman v. Baca is submitted. Thank you, Your Honor. Very much. And we will now hear arguing the case of Gay v. Quinn.
judges: M. Smith, Jr., Hurwitz, Ezra